# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BECKLEY DIVISION

JOEL BRUCE SCHOONOVER,     )
     **Plaintiff,**     )
     )
**v.**     )     **CIVIL ACTION NO. 5:04-0638**
     )
MOUNT OLIVE CORRECTIONAL     )
COMPLEX, *et al.*     )
     **Defendants.**     )

## PROPOSED FINDINGS AND RECOMMENDATION

On June 23, 2004, Plaintiff, an inmate then incarcerated at St. Mary's Correctional Center [SMCC], St. Mary's, West Virginia,[1] and acting *pro se*, filed his Complaint in this matter claiming entitlement to relief pursuant to 42 U.S.C. § 1983.[2] (Document No. 1.) By Standing Order filed on June 28, 2004, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 4.)

## PROCEDURE AND FACT

On May 28, 2003, while confined at SMCC, a Violation Report was issued against Plaintiff charging him with violating West Virginia Division of Corrections [W.Va. DOC] Disciplinary Rule 1.20, Refusing Drug/Alcohol Screening. (Document No. 1, p. 30.) The circumstances underlying the violation were stated in the Report as follows:

---

[1] Plaintiff is presently confined at Mount Olive Correctional Complex [MOCC], Mt. Olive, West Virginia.

[2] Because Plaintiff is acting *pro se*, the documents which he has filed are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

On 28 May 2003 I, Major Don Stonebreaker was assigned as coordinator during the intake process. Offender Schoonover did not provide a urine sample during the allotted time frame.

(Id.) On June 3, 2003, Plaintiff appeared before Institutional Magistrate Defendant William D. Hale at which time he pled guilty to the charge, stating that although he was given water, he "just could not produce a sample." (Id., p. 42.) Defendant Magistrate Hale sanctioned Plaintiff to a 60 day term of punitive segregation and a 60 day loss of all privileges, to begin upon transfer to another facility or when space was available. (Id., pp. 42-44.) Plaintiff appealed Defendant Magistrate Hale's decision, and his appeal was ultimately denied by the Commissioner on June 25, 2003. (Id., p. 32.)

Plaintiff was subsequently transferred to MOCC, where a second Violation Report charging him with violating Disciplinary Rule 1.20 was issued on July 27, 2003. (Id., p. 31.) The circumstances of this violation were stated as follows:

On 27 July 2003 at approx. 0850 hrs., while working our assigned post of Quilliams I, COI Buck Coleman and myself, COII Scott Rogers, done a complete walk-thru explaining to each inmate on the random urinalysis list for the month of July, that they had two (2) hours to complete the task. At approx. 1055 hrs. Officer Coleman and myself preceded to Pod Cell #525 where Inmate Joel Schoonover #31711 lives. This was our second attempt to complete the test on Inmate Schoonover. At this time, Inmate Schoonover was still unable to complete the test. This puts Inmate Schoonover in direct violation of 1.20 Refusing Drug/Alcohol Screening.

(Id.) On August 5, 2003, Plaintiff appeared before Defendant Magistrate Hale and pled not guilty to the charge. (Id., p. 45.) Magistrate Hale heard testimony from Plaintiff and Defendant Scott Rogers, the reporting officer. (Id.) Plaintiff testified that he had a "shy bladder" and has requested medical attention for his condition. (Id.) He further testified that if given more time, he could have produced a sample. (Id.) Defendant Scott Rogers confirmed the statements in the Violation Report and stated that Plaintiff was allowed to drink more than eight ounces of water. (Id.) Plaintiff admitted that he consumed about one half gallon of water. (Id.) Based upon the testimony and the

2

Violation Report, Defendant Magistrate Hale found Plaintiff guilty of violating Rule 1.20 and sanctioned him to a 60 day period of punitive segregation and a 60 day loss of all privileges, commencing August 5, 2003, through October 4, 2003. (Id., pp. 45-47.)

Plaintiff appealed the Magistrate's decision to the Warden and Commissioner. By letter dated October 14, 2003, the Commissioner remanded the matter to the Warden for consideration of evidence from Defendant Mary Yelinek, then Medical Director at MOCC, referencing a medical problem rendering Plaintiff unable to produce a urine sample under normal procedures. (Document No. 1, Exhibits, p. 6.) On October 21, 2003, Defendant Warden McBride reversed Defendant Magistrate Hale's decision and recommended that this matter be expunged from his inmate record. (Id., p. 5.)

Plaintiff filed his initial Complaint in this matter on June 23, 2004, naming as a Defendant, MOCC. (Document No. 1.) Essentially Plaintiff complains that he was denied adequate medical care in violation of the Eighth Amendment and seeks damages in the amount of $50,000.00 for his pain and suffering. (Id., p. 4.) On November 15, 2004, Plaintiff filed additional evidence in support of his Complaint, consisting of copies of various administrative remedy and request for medical service forms. (Document No. 5.) By Order entered January 10, 2005, the undersigned advised Plaintiff that MOCC, as an agency of the State of West Virginia, is immune from suit under the Eleventh Amendment, unless the State has waived its immunity, and directed him to file an Amended Complaint naming particular individuals whom he claims violated his constitutional rights and a short and plain statement of the claims against them showing that he is entitled to relief, pursuant to Rule 8 of the Federal Rules of Civil Procedure. (Document No. 8.)

In response to the Court's Order, Plaintiff filed on January 24, 2005, his Amended

Complaint, naming as Defendants the following persons: (1) Thomas McBride, Warden of MOCC; (2) Scott Rogers, Correctional Officer, MOCC; (3) Buck Coleman, Correctional Officer, MOCC; (4) William Hale, Institutional Magistrate; (5) Everett Neff, Correctional Officer, SMCC; (6) Doctor Williams; (7) Mrs. Parsons, Correctional Officer, MOCC; (8) Mrs. Rhodes, MOCC; (9) Ms. Yelinek, MOCC; (10) William Fox, Warden, SMCC; (11) Don Stonebreaker, Major, SMCC; (12) D. Freeman, MOCC; (13) Mount Olive Correctional Complex; (14) St. Mary's Correctional Center; and (15) the West Virginia Division of Corrections. (Document No. 9.) Essentially, Plaintiff complains that the Defendants acted with deliberate indifference to his serious medical needs in violation of his rights under the Eighth Amendment of the United States Constitution and subjected him to cruel and unusual punishment. (Id., pp. 2-6.) He further claims that he was denied due process, in violation of the Fourteenth Amendment. (Id.) Specifically, Plaintiff alleges that Defendants refused to provide him with medication to calm his nerves and treat his depression, which rendered him incapable of producing a urine sample for drug and alcohol testing, on demand. (Id., pp. 2, 5.) Consequently, he was twice adjudged guilty of violating W.Va. DOC Disciplinary Rule 1.20, Refusing Drug/Alcohol Screening, and was sanctioned to a 60-day confinement in punitive segregation and a 60-day loss of all privileges, on each violation. (Id.) After serving the 120 day term of punitive segregation, as imposed by Defendant Magistrate Hale, Plaintiff was examined and diagnosed with a condition rendering him incapable of producing a urine sample on request. On October 7, 2003, Defendant Dr. Williamson issued an Order directing that Plaintiff be given either medication or a catheter when undergoing drug and alcohol screening. (Document No. 1, pp. 3-4.)

Plaintiff further claims that when he was confined in punitive segregation at MOCC, he

4

developed a knot on the back of his head, which caused him "excruciating pain." (Document No. 9, p. 3.) He submitted numerous requests "literally pleading for medical attention," but was denied medical assistance until the "knot became infected and swelled to the point that it burst open during his sleep." (Id.) Finally, upon receiving medical care, Plaintiff alleges that he was placed in a "lock down room in the MOCC medical department where he was simply forgotten about for 2 and one 1/2 days." (Id.) He contends that he "had no food, no toilet paper, no shower, no hygiene, he was not given his regular medication, NOTHING!" (Id.) He alleges that after screaming and pounding on the door for two and one 1/2 days, he was able to attract someone's attention and was told: "We did not know you were there!(?)" (Id.) Plaintiff seeks $100,000 in compensatory damages for "the acts of negligence and cruel and unusual punishment that were unjustly placed on your petitioner at the hands of its employees of MOCC and SMCC." (Id., p. 6.) He further seeks an order directing the Defendants to pay all costs and the filing fee in this civil action. (Id.)

On February 3, 2005, Defendants Thomas McBride, Scott Rogers, Buck Coleman, William Hale, Everett Neff, Mrs. Parsons, Mrs. Rhodes, William Fox, Don Stonebreaker, D. Freeman, MOCC, SMCC, and W.Va. DOC [collectively, the State Defendants], by counsel, Charles Houdyschell, Jr., Senior Assistant Attorney General, filed their Waiver of Reply and Alternative Motion to Dismiss and Memorandum in Support. (Document Nos. 26-27.) Attached to their Memorandum as Exhibits are: (1) W.Va. DOC Policy Directive 335.00, Inmate Grievance Procedures, and (2) W.Va. DOC Policy Directive 325.00, Discipline of Inmates. (Document No. 27, Exhibits 1-2.) In their Memorandum in support of their Motion, the State Defendants contend that Plaintiff's Complaint must be dismissed for the following reasons: (1) The State Defendants MOCC, SMCC, and W.Va. DOC are immune from suit under the Eleventh Amendment (Document No. 27,

p. 4.); (2) Plaintiff has failed to exhaust fully his administrative remedies (Id., pp. 5-7.); and (3) The State Defendants are entitled qualified immunity. (Id., pp. 8-17.)

In support of their claim that they are entitled to qualified immunity, the State Defendants assert that Plaintiff cannot prove their conduct violated his constitutional rights and that the constitutional rights violated were clearly established at the time when they acted in violation of them. (Id., pp. 8-17.) Concerning Plaintiff's claim that he was denied due process, the State Defendants contend that Plaintiff possesses no liberty interest in his placement in punitive segregation, loss of privileges, and the incidents accompanied with segregation. (Id., pp. 11-14.) With respect to Plaintiff's Eight Amendment claims, the State Defendants first contend that his confinement in punitive segregation does not violate the Eighth Amendment. (Id., pp. 14-15.) Second, the State Defendants aver that "[m]ere malpractice or negligence in diagnosis or treatment does not state a constitutional claim." (Id., p. 15.) Third, the State Defendants contend that Plaintiff's disagreement with his medical care does not state a constitutional violation. (Id.) The State Defendants acknowledge however, that Plaintiff's Amended Complaint does not address the subjective component of deliberate indifference. (Id., p. 16.) The State Defendants further claim that Defendants Thomas McBride and William Fox, acting in administrative/supervisory positions, had no direct involvement in the actions comprising Plaintiff's claims, and therefore, Plaintiff has failed to state a claim of supervisory liability. (Id., p. 11.)

On February 4, 2005, Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff, advising him of his right to file a response to the State Defendants' Motion to Dismiss. (Document No. 29.) Plaintiff filed on February 11, 2005, his "Reply" to the State Defendants' Motion to Dismiss. (Document No. 33.) Attached to his Reply are copies of his

6

administrative remedies. (Id., pp. 8-36.) Plaintiff first avers that as evidenced by the State Defendants' statement that they do not dispute "exhaustion of administrative remedies of the second charge and there is appeal activity to the first charge," he has exhausted his administrative remedies. (Id., pp. 1-2.) Next, Plaintiff agrees that MOCC, SMCC, and the W.Va. DOC, are not persons subject to suit under § 1983. (Id., p. 2.) With respect to the individually named State Defendants however, he alleges that they are not immune from suit under the Eleventh Amendment.[3] (Id.) He alleges that these Defendants have acted under the color of state law and that he can present a constitutional claim against them. (Id., pp. 2-3.) Third, Plaintiff contends that Defendant Magistrate William Hale "wrongfully sentenced [him] to 60 days in the lockdown unit at [MOCC] for something that had he done a proper investigation, it would have been cleared up with no problems." (Id., p. 3.) He states that he advised Defendant Magistrate William Hale to look in his medical file for a diagnosed bladder condition, to which he responded: "It's not my job to do that and I don't have time." (Id., pp. 3-4.)

Fourth, Plaintiff contends that he was denied medical treatment for the knot on his head and that when he did receive treatment, the conditions of his confinement were unconstitutional. (Id., p. 4.) He describes the conditions of his confinement for these two days as follows:

> [Plaintiff was] placed in a room in medical with no blankets, no hygiene, no toilet paper, he stayed in that room for 2 1/2 days and received no food, none of his prescribed medication, NOTHING. He simply lay there in fear for his life thinking "They are just going to leave me here to die."

(Id.) He further contends that he repeatedly requested medical care for the knot on his head, but "[t]hey plainly refuse[d] to help!" (Id.) Plaintiff alleges that this conduct certainly shocks the

---

[3] Plaintiff notes that some of the State Defendants "were named as only witnesses and will be added to the petitioners Rule 26 Disclosure at a later time." (Document No. 33, p. 2.)

conscience and violates his rights under the Eighth Amendment. (Id., pp. 4-5.)

Defendant Dr. Williamson, M.D., by counsel, John D. McChesney, Esquire, and the law firm, Rawls & McNelis, PC, filed his Motion to Dismiss and Memorandum in Support. (Document Nos. 31-32.) Defendant Dr. Williamson first contends that to the extent he is the named "Dr. Williams" in this civil action, Plaintiff has failed to allege that he committed any wrongful conduct and therefore, cannot satisfy the objective component required under the Eighth Amendment. (Id., p. 3.) Notwithstanding this failure, Defendant Dr. Williamson contends that Plaintiff's Complaints "lack any allegation that Dr. Williamson knew of any serious medical need suffered by the plaintiff and that he knowingly failed to provide proper medical treatment for such a need." (Id.) He states that Plaintiff does not demonstrate that he was aware of Plaintiff's bladder condition and failed to treat the condition or notify other prison officials of his condition. (Id.) Plaintiff therefore, is unable to satisfy the subjective component of the Eighth Amendment analysis. (Id.) Defendant Dr. Williamson further contends that Plaintiff has not demonstrated that he was aware that Plaintiff was locked up for two and one half days in the medical department and failed to provide him medical treatment. (Id., pp. 3-4.)

> In fact, the plaintiff indicates that he was "forgotten" at that time. If the defendants, including Dr. Williamson, forgot about the plaintiff, then they were clearly not punishing him or acting with a sufficiently culpable state of mind. They simply made a mistake.

(Id., p. 4.) Finally, Defendant Dr. Williamson avers that the bulk of Plaintiff's claims concern his placement in punitive segregation, with which he had no involvement. (Id., pp. 1, 4.)

On February 14, 2005, Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff, advising him of his right to file a response to Defendant Dr. Williamson's Motion to Dismiss. (Document No. 34.) Plaintiff filed his Response to Defendant Dr.

Williamson's Motion on March 18, 2005. (Document No. 36.) Plaintiff alleges that "had Dr. Williamson acted in a professional man[ner] and performed a proper examination on the Plaintiff the Plaintiff would have never been subjected to being placed in [MOCC's] segregation 'lockdown' unit for 120 days." (Id., pp. 2-3.) He states that he was examined by Defendant Dr. Williamson with respect to his inability to produce urine for screening, to which Dr. Williamson responded: "There is nothing wrong with you." (Id., p. 3.) Plaintiff's bladder condition was not examined by Dr. Williamson again until after he served his 120 days of punitive segregation. (Id., p. 4.) Furthermore, Plaintiff alleges that Defendant Dr. Williamson neglected him when he was left in medical lockdown for two and one half days and in considering the three head counts that are conducted on a daily basis at MOCC, a maximum security institution, "had [the Defendants] forgot or simply misplaced an inmate the entire institution . . . would have been placed on lockdown until all inmates were accounted for - but this never happened!" (Id., p. 6.)

Having examined Defendants' Motions and the Responses thereto, together with exhibits, the undersigned has concluded that the State Defendants' Motion to Dismiss must be granted in part and that Defendant Dr. Williamson's Motion to Dismiss must be denied.

## THE APPLICABLE STANDARDS

### Rule 12(b)(6) Dismissal

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). When considering a motion to dismiss, the Court must view the allegations in the Complaint in the light most favorable to the Plaintiff, and must take them as true. See Jenkins v. McKeithen, 395 U.S. 411, 421-422, 89

S.Ct. 1843, 23 L.Ed.2d 404 (1969).  "Because a dismissal under Rule 12(b)(6) is accorded *res judicata* effect, such dismissals are generally disfavored by the courts."  <u>Fayetteville Investors v. Commercial Builders, Inc.</u>, 936 F.2d 1462, 1471 (4th Cir. 1991).  When faced with such a Motion, "the magistrate judge should . . . limit [her]self to a consideration of whether plaintiff's allegations, standing alone and taken as true, pleaded jurisdiction and a meritorious cause of action."  <u>Id.</u> at 1473. In consideration of the Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept the allegations contained in the Plaintiff's Complaint as true and draw all reasonable inferences in favor of the Plaintiff from them. The Court must determine whether the Plaintiff has asserted a cognizable claim against the Defendants and alleged facts which, if true, would support such a claim.

## DISCUSSION

**A.      Total Exhaustion of Administrative Remedies.**

The Prison Litigation Reform Act [PLRA], 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions under 42 U.S.C. § 1983 "or any other Federal law,"though the administrative process may not afford them the relief they might obtain through civil proceedings.[4]  <u>See</u> <u>Booth v. Churner</u>, 532 U.S. 731, 121 S.Ct. 1819, 1820, 149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's

---

[4] 42 U.S.C. § 1997e(a) provides as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."); <u>Porter v. Nussle</u>, 534 U.S. 516, 122 S.Ct. 983, 984, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.). The PLRA exhaustion requirement applies with equal force to § 1983 and <u>Bivens</u> actions. <u>See</u> <u>Yousef v. Reno</u>, 254 F.3d 1214, 1218 (10th Cir. 2001)(PLRA's exhaustion requirement applies to <u>Bivens</u> claims); <u>Nyhuis v. Reno</u>, 204 F.3d 65, 68-69 (3d Cir. 2000)(1997e(a) applies equally to § 1983 and <u>Bivens</u> actions).

In <u>Anderson v. XYZ Correctional Health Services, Inc.</u>, 407 F.3d 674, 678 (4th Cir. 2005), the Fourth Circuit held that administrative exhaustion is not a jurisdictional requirement. The Court stated:

> Section 1997e(c)(2) clearly contemplates the dismissal on the merits of some claims that have not been exhausted. Because a district court must have subject-matter jurisdiction before it can dismiss a claim on the merits, failure to exhaust cannot be viewed as affecting the district court's subject-matter jurisdiction over the claim. See *Chellette*, 229 F.3d at 687 ("Because the existence of jurisdiction is a prerequisite to the evaluation and dismissal of a claim on its merits, it follows that jurisdiction is not divested by the failure to exhaust administrative remedies."); *Underwood v. Wilson*, 151 F.3d 292, 295 (5th Cir. 1998)(per curiam)("The statute provides that the court may dismiss such claims without requiring the exhaustion of administrative remedies. The court would not be empowered to do so if the exhaustion provision deprived the court of jurisdiction over the action." (citation omitted)). We therefore conclude that the PLRA's exhaustion-of-remedies requirement does not operate as a bar to the district court's exercise of its subject-matter jurisdiction.

<u>Id</u>. at 678; <u>See also</u>, <u>Perez v. Wisconsin Dept. of Corr.</u>, 182 F.3d 532, 536-37 (7th Cir. 1999); <u>Underwood v. Wilson</u>, 151 F.3d 292, 294 (5th Cir. 1998), <u>cert. denied</u>, 526 U.S. 1133, 119 S.Ct. 1809, 143 L.Ed.2d 1012 (1999); <u>Wright v. Morris</u>, 111 F.3d 414, 421(6th Cir.), <u>cert. denied</u>, 522

U.S. 906, 118 S.Ct. 263,139 L.Ed.2d 190 (1997); Nyhuis v. Reno, 204 F.3d at 69, n. 4.

The majority of the Circuits, including the Fourth Circuit, have held in the context of inmates' suits under § 1983 that the failure to exhaust administrative remedies is an affirmative defense under Rule 8©)[5] of the Federal Rules of Civil Procedure like the defense of statute of limitations. Anderson, 407 F.3d at 681 ("In our view, the language and structure of the PLRA make it clear that an inmate is not required to allege exhaustion of remedies in his § 1983 prison-conditions complaint. Instead, an inmate's failure to exhaust his administrative remedies must be viewed as an affirmative defense that should be pleaded or otherwise raised by the defendant."); Jackson v. District of Columbia, 254 F.3d 262, 267 (D.C. Cir. 2001); Casanova v. Dubois, 304 F.3d 75, 77, fn. 3 (1st Cir. 2002); Snider v. Melindez, 199 F.3d 108, 111-12 (2d Cir. 1999); Jenkins v. Haubert 179 F.3d 19, (2d Cir. 1999); Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002); Wendell v. Asher, 162 F.3d 887, 890 (5th Cir. 1998)(in dicta); Massey v. Wheeler, 221 F.3d 1030, 1034 (7th Cir. 2000); Massey v. Helman, 196 F.3d 727, 734-35 (7th Cir. 2000), cert. denied, 532 U.S. 1065, 121 S.Ct. 2214, 150 L.Ed.2d 208 (2001); Perez v. Wisconsin Dept. of Corr., 182 F.3d at 536; Foulk v. Charrier, 262 F.3d 687, 697 (8th Cir. 2001); cf. Knuckles El v. Toombs, 215 F.3d 640, 642 (6th Cir 2000), cert. denied, 531 U.S. 1040, 121 S.Ct. 634, 148 L.Ed.2d 542 2000)(An inmate must

---

[5] Listing certain traditionally recognized defenses, Rule 8(c) of the Federal Rules of Civil Procedure provides as follows:

**Affirmative Defenses.** In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver and any other matter constituting an avoidance or affirmative defense.

"plead his claims with specificity and show that they have been exhausted by attaching a copy of the applicable administrative dispositions to the complaint, or, in the absence of written documentation, describe with specificity the administrative proceeding and its outcome."). Likewise, with respect to <u>Bivens</u> actions, the Seventh Circuit Court of Appeals held in <u>Dale v. Lappin</u>, 376 F.3d 652, 655 (7th Cir. 2004), that "[a]lthough exhaustion of administrative remedies is a precondition to a federal prisoner filing a <u>Bivens</u> suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted). In the context of claims under the PLRA however, *sua sponte* dismissal by the District Court is appropriate when it is apparent from the face of the complaint that the inmate has not exhausted his administrative remedies. <u>Anderson</u>, 407 F.3d at 682.

> In the context of PLRA claims, then, we believe it is appropriate to recognize that district courts have the same authority to inquire into the applicability of an affirmative defense as in the habeas context. Such a conclusion gives some teeth to the PLRA's exhaustion requirement, yet does not do a disservice to the statutory language carefully chosen by Congress.
>
> Accordingly, we conclude that a district court may raise the issue of exhaustion of remedies on its own motion. Except in the rare case where failure to exhaust is apparent from the face of the complaint, however, a district court cannot dismiss the complaint without first giving the inmate an opportunity to address the issue.

<u>Id</u>.

It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal for want of subject matter jurisdiction. <u>See Neal v. Goord</u>, 267 F.3d 116, 121-122 (2d Cir. 2001)(*overruled on other grounds*), a § 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in <u>Neal</u>,

allowing prisoner suits to proceed, so long as the inmate eventually fulfills the

13

> exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, . . . if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset.

Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court.

Furthermore, available administrative remedies must be exhausted with respect to each claim against each Defendant or the Complaint must be dismissed under the "total exhaustion rule" found in § 1997e(a). See Quinones v. Rubenstein, Civil Action No. 5:02-1365 (S.D. W.Va. Sept. 23, 2003)(C.J. Faber)(Applying a plain meaning reading to the phrase "no action" as stated in § 1997e(a), the District Court concluded that no action shall be brought barring total exhaustion of each and every claim)(citing Graves v. Norris, 218 F.3d 884, 885 (8th Cir. 2000); Givens v. City and County of San Francisco, 2002 WL 31478180, *2 (N.D. Cal. Nov. 5, 2002); Saunders v. Goord, 2002 WL 1751341, *3 (S.D. N.Y. Jul. 29, 2002)). In Quinones, Chief Judge Faber adopted the total exhaustion rule as applied to habeas actions filed pursuant to 28 U.S.C. § 2254, and applied it to §1983 and other similar actions. (Id., p. 21.) (Id., p. 20.) The Court concluded that the total exhaustion rule "does not detrimentally affect plaintiff's available remedies . . .[r]ather dismissing the present [unexhausted] claims improves judicial economy by encouraging the plaintiff to reshape his complaint to include only cognizable claims." (Id., p. 22.)

Proper exhaustion of available administrative remedies requires that "a prisoner must submit

inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." <u>Dale v. Lappin</u>, 376 F.3d at 655 (internal citations omitted). The West Virginia Division of Corrections' Policy Directive 335.00 establishes procedures whereby state inmates may seek review of complaints which relate to any aspect of their imprisonment, other than appeals of disciplinary and confinement matters.  (Document No. 27, Exhibit 1.) Within 15 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must submit a G-1 Grievance Form to the Unit Manager. (<u>Id</u>., pp. 1-2, ¶¶ 1 and 4.) The Unit Manager must respond to the inmate's Grievance within five business days. (<u>Id</u>., p. 2, ¶ 9.) If the Unit Manager's response was unfavorable, the inmate may appeal within five working days to the Warden/Administrator by filing a G-2 Grievance Form. (<u>Id</u>., p. 3, ¶ 1.) Should the Unit Manager fail to respond within the five day period of time, the inmate may immediately file a G-2 Grievance Form utilizing the G-1 Grievance Form copy. (<u>Id</u>., p. 2, ¶ 10.) The Warden/Administrator must respond to the appeal, in writing, within five working days. (<u>Id</u>., ¶ 3.) If the Warden/Administrator, in his/her discretion, determines that an investigation is warranted, a final response shall be made to the inmate within 30 working days. (<u>Id</u>., ¶ 4.) If the Warden/Administrator's response was unfavorable, the inmate may appeal within five working days to the Commissioner/designee of the Division of Corrections. (<u>Id</u>., pp. 3-4, ¶ 1.) Furthermore, if the Warden/Administrator fails to respond within the five day period of time, the inmate may submit his appeal to the Commissioner/designee within five working days of the lapsed response time. (<u>Id</u>., pp. 3-4, ¶ 1.)The Commissioner must respond to the appeal within ten working days. (<u>Id</u>., p. 4, ¶ 5.) The administrative process is exhausted when the Commissioner responds to the inmate's final appeal. (<u>Id</u>., pp. 4-5.)

In their Motion, the State Defendants contend that Plaintiff failed to exhaust fully his administrative remedies prior to filing Complaint. (Document No. 26, p. 7.) The State Defendants contend that although they "do not dispute that the plaintiff has filed numerous grievances . . . in light of the fact that the plaintiff has chosen to name numerous defendants they are not prepared to concede compliance with the total exhaustion rule." (Id.) Conversely, Plaintiff contends that he has fully exhausted his administrative remedies.

After reviewing the record, the undersigned finds that it is unclear at this point whether Plaintiff fully exhausted his administrative remedies with respect to each claim and each Defendant before filing his Complaint in this civil action. Concerning Plaintiff's appeal of his placement in punitive segregation, it appears that he properly appealed the Magistrate's decision to the Warden and then to the Commissioner. (Document No. 1, Exhibits, pp. 3-47.) Thus, this claim is considered exhausted. However, with respect to his claims concerning the knot on his head, the request for medications, and the confinement in medical lockdown for two and one half days, it appears that Plaintiff submitted numerous "Inmate Medical Services Request" forms and G-1 Grievance Forms, but there is no indication in the record whether Plaintiff further submitted a G-2 Grievance Form to the Warden/Administrator or an appeal to the Commissioner. Based on the foregoing, the undersigned finds that the record is insufficient at this stage to determine whether Plaintiff has exhausted his administrative remedies. Accordingly, the undersigned finds that Plaintiff may be able to plead facts which would entitle him to relief and therefore, the State Defendants' Motion on this ground should be denied. The undersigned recommends that the District Court permit discovery limited to the issue of exhaustion, followed by a period of time for the filing of motions to dismiss with respect to the total exhaustion of Plaintiff's administrative remedies.

**B.**      **Eleventh Amendment Immunity.**

Suits against a state or state agencies for monetary damages are barred by the Eleventh Amendment to the United States Constitution.[6] See Will v. Michigan Dept. of State Police, 491 U.S. 58, 66, 109 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989). The Eleventh Amendment protects states from being sued in federal court on the basis of state law. See Pennhurst State School & Hosp. V. Halderman, 465 U.S. 89, 117, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); Westinghouse Elec. Corp. v. West Virginia Dept. of Highways, 845 F.2d 468, 470 (4th Cir.), cert. denied, 488 U.S. 855, 109 S.Ct. 143, 102 L.Ed.2d 116 (1988). The Eleventh Amendment immunity not only applies to states and state agencies, but extends to suits filed against state officials when "the relief sought and ordered has an impact directly on the State itself." Pennhurst, 465 U.S. at 117, 104 S.Ct. at 917. See also, Cromer v. Brown, 88 F.3d 1535, 1332 (4th Cir. 1996)("This immunity extends to 'arm[s] of the State,' (citations omitted) including state agencies and state officers acting in their official capacity. (citations omitted)). "Neither a state nor its officials acting in their official capacities are 'persons' under § 1983." Will v. Michigan Dept. of State Police, 491 U.S. at 71, 109 S.Ct. at 2312. A state may however, waive its constitutional immunity in one of two ways:

> (1) directly by statutory or constitutional provision, or (2) "constructively" by voluntarily participating in a federal program when Congress has expressly conditioned state participation in that program on the state's consent to suit in federal court.

Westinghouse, 845 F.2d at 470. Waiver by statutory or constitutional provision must contain "an 'unequivocal' statement of the state's intention to subject itself to suit in federal court." Id. For

---

[6] The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

17

purposes of civil actions brought pursuant to 42 U.S.C. § 1983 in federal court, "a state's general waiver of sovereign immunity will not suffice to waive the immunity conferred by the eleventh amendment." Id.; see also, Giancola v. West Virginia Dept. of Public Safety, 830 F.2d 547 (4th Cir. 1987).

The W.Va. DOC, an agency of the State of West Virginia, and MOCC and SMCC, divisions of the W.Va. DOC, also agencies of the State of West Virginia, are immune from suit under the Eleventh Amendment, unless the State has waived its immunity. Neither means of waiver however, is present here. Accordingly, to the extent Plaintiff is seeking damages from Defendants W.Va. DOC, MOCC, and SMCC, his claims are barred by the Eleventh Amendment and must be dismissed.

**C.    *Respondeat Superior* / Supervisory Liability.**

The allegations stated in Plaintiff's Complaint of violations of his constitutional rights are cognizable under 42 U.S.C. § 1983. A claim under 42 U.S.C. § 1983 must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. Id. Liability under the doctrine of *respondeat superior* is generally inapplicable to actions arising under 42 U.S.C. § 1983. See Monell v. Department of Social Services of the City of NY, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Instead, liability is personal, based upon each defendant's own constitutional violations." Liability can be premised, however, "on a recognition that supervisory indifference or 'tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984), cert. denied sub nom., Reed v. Slakan, 470 U.S. 1035, 105 S.Ct.

1413, 84 L.Ed.2d 796 (1985). A plaintiff must show "a pervasive and unreasonable risk of harm from some specified source and that the supervisor's corrective inaction amounts to deliberate indifference or 'tacit authorization of the offensive [practices].'" Id. at 373. Evidence of a supervisor's continued inaction in the face of documented widespread abuses provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates. Id.

Defendants Thomas McBride and William Fox contend that Plaintiff has failed to demonstrate how they were personally involved in violating Plaintiff's constitutional rights under the Eighth and Fourteenth Amendments. (Document No. 27, p. 11.) These Defendants contend that "[a]t the very least, the plaintiff appears to be suing Warden Bride and Warden Fox based upon their supervisory liability positions" with respect to their responses to his administrative grievances. (Id.) Consequently, Plaintiff has alleged nothing more than a vague assertion that Defendants Thomas McBride and William Fox violated his constitutional rights and has failed to demonstrate any element of personal involvement by Defendants Thomas McBride and William Fox. Accordingly, Plaintiff has improperly raised his claims against Defendants Thomas McBride and William Fox under the doctrine of *respondeat superior*, has failed to establish supervisory liability and therefore, Defendants Thomas McBride and William Fox must be dismissed as Defendants in this civil action.

### D.     Eighth Amendment.

The Eighth Amendment protects against the infliction of "cruel and unusual punishments." As a general matter, prohibited punishments include those which "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)(*quoting* Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)).

19

"It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Thus under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). See also Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994)(Supreme Court noted that the Eighth Amendment imposes certain duties upon prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"), quoting Hudson v. Palmer, 468 U.S. 517, 526 - 27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)); Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)(Court held that only those conditions depriving inmates of "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation). The Eighth Amendment "does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. at 349, 101 S.Ct. at 2400. "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Id. at 347, 101 S.Ct. at 2399; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995), citing Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992); Lopez v. Robinson, 914 F.2d 486, 490 (4th Cir. 1990). Sentenced prisoners are therefore constitutionally guaranteed adequate medical care under the Eighth Amendment.

To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and

safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297-99, 111 S.Ct. 2321, 2323-2325, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities.'" Id. at 298, 111 S.Ct. 2321 (citing Rhodes v. Chapman, 452 U.S. at 347, 101 S.Ct. 2392)."In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements – that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" Shakka v. Smith, 71 F.3d at 166 (quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)(quotation omitted)). See also White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1993)("In Strickler, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") A medical need serious enough to give rise to an Eighth Amendment claim involves a condition which places an inmate at substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment causes continuous severe pain. The Fourth Circuit stated the applicable standard in Miltier v. Beorn, 896 F.2d 848, 851-852 (4th Cir. 1990), as follows:

> To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness. * * * Deliberate indifference may be demonstrated by either actual intent or reckless disregard. * * * A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. * * * Nevertheless, mere negligence or malpractice does not violate the eighth amendment. (Citations omitted)

See also Sosebee v. Murphy, 797 F.2d 179, 183 (4th Cir. 1986)(Facts indicating that guards were aware that inmate's condition had worsened and was life-threatening and intentionally ignored the situation and refused to seek medical assistance provided a reasonable basis for finding deliberate

indifference to inmate's medical needs.); <u>Loe v. Armistead</u>, 582 F.2d 1291 (4th Cir. 1978), <u>cert.</u>

<u>denied</u>, <u>Moffitt v. Loe</u>, 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980)(Pretrial detainee's

allegations of delay in treatment of his broken arm indicated a reasonable basis for inferring

deliberate indifference to his serious medical needs.); <u>Russell v. Sheffer</u>, 528 F.2d 318 (4th Cir.

1975)(Summary judgment for defendants affirmed where claim that  inmate received

constitutionally inadequate medical treatment involved a question of medical judgment not subject

to judicial review.). First therefore, Plaintiff in this case must allege and eventually establish a

"sufficiently serious" deprivation of adequate medical care and resulting "serious or significant

physical or mental injury" in order to maintain and prevail upon his Eighth Amendment claim.

Second, to establish the subjective component of deliberate indifference, Plaintiff must allege and

prove each defendant's consciousness of the risk of harm to him. See <u>Farmer</u>, 511 U.S. at 840, 114

S.Ct. at 1980. In particular, Plaintiff must establish that each Defendant "knows of and disregards

an excessive risk to inmate health and safety; the official must both be aware of facts from which

the inference could be drawn that a substantial risk of serious harm exists, and he must also draw

the inference." <u>Farmer</u>, 511 U.S. at 837, 114 S.Ct. at 1979. Plaintiff in this case must therefore allege

and establish each Defendant's awareness that he was receiving constitutionally inadequate medical

care and disregard for the serious physical and mental consequences.

Liberally construing the allegations contained in Plaintiff's Complaints and Responses in

favor of him, the undersigned finds that it appears Plaintiff may be able to prove facts which would

entitle him to relief. With respect to his Eighth Amendment claims, Plaintiff alleges that he was

denied (1) medications for his pre-incarcerated documented nervous and depression conditions, (2)

medication to assist him in producing on demand a urine sample for a required drug and alcohol test,

(3) medical care for a knot on the back of his head, and (4) food, toilet paper, hygiene, and medication for a period of two and one half days. Although Plaintiff does not directly address the subjective element of deliberate indifference of an Eighth Amendment claim, he does point out that daily head counts at MOCC would have alerted the Defendants that he was missing, but the Defendants failed to acknowledge his existence for two and one half days. It may be inferred from Plaintiff's statement that the Defendants' inaction in this regard constitutes deliberate indifference to his serious medical needs. Furthermore, the undersigned notes that the State Defendants acknowledge that Plaintiff's claims "may allege a serious medical need, at least with respect to the knot on the plaintiff's head." (Document No. 27, p. 16.) With respect to Defendant Dr. Williamson, it appears from Plaintiff's response that he was the medical official who examined Plaintiff prior to his being "left" in medical lockdown for two and one half days. Furthermore, it appears that Plaintiff is alleging that Defendant Dr. Williamson refused to provide him medication for his nervous and depression conditions and was one of the medical staff who refused to provide medical care for the knot on his head. In view of the foregoing, the undersigned finds that Plaintiff has stated facts sufficient to defeat the Defendants' Motions to Dismiss. The undersigned recommends that the District Court allow Plaintiff additional time to clarify his claims with respect to each Defendant and move to dismiss any Defendants considered as witnesses, and not as named Defendants.

  **E.**  **Fourteenth Amendment.**

  Although the range of protected liberty interests under the Fourteenth Amendment for defendants convicted and confined in prison are significantly reduced for the period of incarceration, "confinement to prison [nevertheless] does not strip a prisoner of *all* liberty interests." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991)(emphasis added)(The fact of conviction and imprisonment

implies the inmate's transfer of his liberty to prison officials, who in their broad discretion, administer his sentence. To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. See Board of Regents v. Roth, 408 U.S. at 570-71, 92 S.Ct. at 2705-06. An inmate holds a protectible right in those interests to which he has a legitimate claim of entitlement. Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979)(*quoting* Roth, 408 U.S. at 577, 92 S.Ct. 2709). In Gaston, the Fourth Circuit determined that an inmate possesses a claim of entitlement in those interests "which were not taken away expressly or by implication, in the original sentence to confinement." Id. at 343. A State may create for an inmate a protected liberty interest not found in the Constitution of the United States by establishing explicit and mandatory "procedures that sufficiently channel the discretion of prison officials." Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)(recognizing state created liberty interest in good time credit); See also, Ewell v. Murray, 11 F.3d 482, 488 (4th Cir. 1993); Stewart v. Bailey, 7 F.3d 384, 392 (4th Cir. 1993)(stating that the State procedures "must create 'substantive predicates' to guide the decisionmaker's discretion, such as 'specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow.'")(citations omitted). Such interests however,

> will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995)(citations omitted). Thus, to establish a deprivation of a liberty interest with respect to respect to custody classifications or the conditions of confinement, Plaintiff must show either (1) that the confinement

creates a significant hardship on the inmate and the State has created a protected liberty interest in remaining free from the specific confinement or (2) that the conditions of confinement exceed those expected in the sentence of confinement. See Sandin, 515 U.S. at 483-84, 115 S.Ct. at 2299-2300.

Plaintiff does not possess a liberty interest in retaining privileges. His 60 day loss of all privileges was for two periods of 60 days each. "[T]he incidental and short-lived deprivations complained of by [Plaintiff] are too ephemeral to give rise to a protected liberty interest requiring prior notice and hearing." Dawson v. Kendrick, 527 F.Supp.1252,1305 (S.D. W.Va. 1981). Furthermore, the denial of privileges and confinement in punitive segregation are matters clearly contemplated by Plaintiff's original sentence. See Gaston, 946 F.2d at 343 (To safely and efficiently run the prison, prison officials maintain broad discretion over an inmate's "location, variations of daily routines, changes in conditions of confinement (including administrative segregation), and the denial of privileges.") Accordingly, to the extent Plaintiff contends he was denied due process when he was sanctioned to a 60 day loss of privileges, his claim must be dismissed.

To the extent Plaintiff complains that his confinement in medical lockdown for two and one half days violated his right to due process however, may state a claim upon which relief can be granted. Accordingly, the undersigned recommends that the State Defendants' Motion with respect to this claim be denied. Because the undersigned has recommended that the District Court deny the State Defendants' Motion to Dismiss with respect to Plaintiff's constitutional claims, the undersigned does not consider the State Defendants' qualified immunity defense at this time.

## PROPOSAL AND RECOMMENDATION

The undersigned hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS**, that the District Court **GRANT** the State Defendants'

Motion to Dismiss (Document No. 26.) with respect to Defendants West Virginia Division of Corrections, Mount Olive Correctional Complex, St. Mary's Correctional Center, Thomas McBride, and William Fox and **DENY** the State Defendants' Motion (Document No. 26.) in all other respects; **DENY** Defendant Dr. Williamson's Motion to Dismiss (Document No. 31.); and refer this matter back to the undersigned for the scheduling of further proceedings.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby FILED, and a copy will be submitted to the Honorable United States District Judge Robert C. Chambers. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have thirteen days (ten days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.) cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Chambers, and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to counsel of record and to Petitioner, *pro se*.

ENTER: August 26, 2005.

R. Clarke VanDervort
United States Magistrate Judge