**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | | |
|---|---|---|
| **JOEL BRUCE SCHOONOVER,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:04-0638** |
| | ) | |
| **MOUNT OLIVE CORRECTIONAL** | ) | |
| **COMPLEX,** *et al.* | ) | |
| **Defendants.** | ) | |

<u>**PROPOSED FINDINGS AND RECOMMENDATION**</u>

Pending are Defendant Dr. Larry D. Williamson's Motion for Summary Judgment filed on January 12, 2006 (Document No. 60.), and State Defendants' Motion for Summary Judgment filed on January 16, 2006 (Document No. 65.). Defendant Williamson asserts that he is entitled to summary judgment because Plaintiff failed to exhaust administrative remedies with respect to all of the claims which he raises in this matter. (Document No. 61.) The State Defendants likewise claim that they are entitled to summary judgment because Plaintiff failed to exhaust administrative remedies with respect to each claim which he has raised and each Defendant whom he has named. The State Defendants attach the Declaration of Beverly Gandee, Senior Inmate Grievance Coordinator for the West Virginia Department of Corrections to their Memorandum in Support of their Motion for Summary Judgment. (Document No. 66.) By Order filed on January 17, 2006, Plaintiff was advised of his right to file a response to the State Defendants' Motions for Summary Judgment pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975). (Document No. 68.) Apparently, having received the Court's Order, Plaintiff sent a letter addressed to the Clerk and the undersigned which the undersigned reads as restating the circumstances which he alleges in support his claim that he received constitutionally insufficient medical care while he was incarcerated at

Mount Olive Correctional Complex [MOCC] and informing the Court that he has previously provided all of the documents, proof and information in his possession in support of his claims.[1] (Document No. 69.)

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Plaintiff filed his Complaint initially in this matter on June 23, 2004, acting *pro se*, naming MOCC as a Defendant and claiming entitlement to relief pursuant to 42 U.S.C. § 1983.[2] (Document No. 1.) Essentially, Plaintiff complains that he was denied adequate medical care in violation of the Eighth Amendment and seeks damages in the amount of $50,000.00 for his pain and suffering. (Id., p. 4.) Plaintiff attaches copies of numerous documents indicating his requests for medication for his nerves and depression and administrative complaints that his requests were not being met. On November 15, 2004, Plaintiff filed additional evidence in support of his Complaint, consisting of copies of various administrative remedy and request for medical service forms. (Document No. 5.) By Order entered January 10, 2005, the undersigned advised Plaintiff that MOCC, as an agency of the State of West Virginia, is immune from suit under the Eleventh Amendment, unless the State has waived its immunity, and directed him to file an Amended Complaint naming particular individuals whom he claims violated his constitutional rights and a short and plain statement of the claims

---

[1]  Because Plaintiff is acting *pro se*, the documents which he has filed are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

[2]  Plaintiff was an inmate incarcerated at St. Mary's Correctional Center, St. Mary's, West Virginia, when he filed his Complaint. It appears that, having discharged his sentence, Plaintiff was released from custody on September 24, 2005, and is currently residing in Elkins, West Virginia. *See* Document No. 50.

against them showing that he is entitled to relief, pursuant to Rule 8 of the Federal Rules of Civil Procedure. (Document No. 8.)

      In response to the Court's Order, Plaintiff filed his Amended Complaint on January 24, 2005, naming as Defendants the following persons: (1) Thomas McBride, Warden of MOCC; (2) Scott Rogers, Correctional Officer, MOCC; (3) Buck Coleman, Correctional Officer, MOCC; (4) William Hale, Institutional Magistrate; (5) Everett Neff, Correctional Officer, SMCC; (6) Doctor Williams; (7) Mrs. Parsons, Correctional Officer, MOCC; (8) Mrs. Rhodes, MOCC; (9) Ms. Yelinek, MOCC; (10) William Fox, Warden, SMCC; (11) Don Stonebreaker, Major, SMCC; (12) D. Freeman, MOCC; (13) Mount Olive Correctional Complex; (14) St. Mary's Correctional Center; and (15) the West Virginia Division of Corrections. (Document No. 9.) Essentially, Plaintiff complains that the Defendants acted with deliberate indifference to his serious medical needs in violation of his rights under the Eighth Amendment of the United States Constitution and subjected him to cruel and unusual punishment. (Id., pp. 2-6.) He further claims that he was denied due process, in violation of the Fourteenth Amendment. (Id.) Specifically, Plaintiff alleges that Defendants refused to provide him with medication to calm his nerves and treat his depression, which rendered him incapable of producing a urine sample for drug and alcohol testing, on demand. (Id., pp. 2, 5.) Consequently, he was twice adjudged guilty of violating W.Va. DOC Disciplinary Rule 1.20, Refusing Drug/Alcohol Screening, and was sanctioned to a 60-day confinement in punitive segregation and a 60-day loss of all privileges, on each violation. (Id.)  Having served a 120 day term of punitive segregation at MOCC, Plaintiff was examined and diagnosed with a condition rendering him incapable of producing a urine sample on request. On October 7, 2003, Defendant Dr. Williamson issued an

Order directing that Plaintiff be given either medication or a catheter when undergoing drug and alcohol screening.  (Document No. 1, pp. 3-4.)

Plaintiff further claims that when he was confined in punitive segregation at MOCC, he developed a knot on the back of his head, which caused him "excruciating pain." (Document No. 9, p. 3.) He submitted numerous requests "literally pleading for medical attention," but was denied medical assistance until the "knot became infected and swelled to the point that it burst open during his sleep." (Id.) Finally, upon receiving medical care, Plaintiff alleges that he was placed in a "lock down room in the MOCC medical department where he was simply forgotten about for 2 and one 1/2 days." (Id.) He contends that he "had no food, no toilet paper, no shower, no hygiene, he was not given his regular medication, NOTHING!" (Id.) He alleges that after screaming and pounding on the door for 2 ½ days, he was able to attract someone's attention and was told: "We did not know you were there!(?)" (Id.) Plaintiff seeks $100,000 in compensatory damages for "the acts of negligence and cruel and unusual punishment that were unjustly placed on your petitioner at the hands of its employees of MOCC and SMCC." (Id., p. 6.) He further seeks an order directing the Defendants to pay all costs and the filing fee in this civil action. (Id.)

On February 3, 2005, the State Defendants filed their Waiver of Reply and Alternative Motion to Dismiss and Memorandum in Support. In their Memorandum in support of their Motion, the State Defendants contended that Plaintiff's Complaint must be dismissed for the following reasons: (1) The State Defendants MOCC, SMCC, and W.Va. DOC are immune from suit under the Eleventh Amendment (Document No. 27, p. 4.); (2) Plaintiff has failed to exhaust fully his administrative remedies (Id., pp. 5-7.); and (3) The State Defendants are entitled qualified immunity. (Id., pp. 8-17.)

On February 4, 2005, Notice pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff, advising him of his right to file a response to the State Defendants' Motion to Dismiss. (Document No. 29.) On February 11, 2005, Plaintiff filed his "Reply" to the State Defendants' Motion to Dismiss. (Document No. 33.) He attached copies of documents pertaining to the State Defendants' claim that he failed to exhaust his administrative remedies to his Reply. (<u>Id</u>., pp. 8-36.) Plaintiff asserted, among other things, that as evidenced by the State Defendants' statement that they do not dispute "exhaustion of administrative remedies of the second charge and there is appeal activity to the first charge," he had exhausted his administrative remedies. (<u>Id</u>., pp. 1-2.)

Defendant Dr. Williamson also filed a Motion to Dismiss and Memorandum in Support. (Document Nos. 31-32.) Plaintiff was notified of his right to file a response to Defendant Williamson's Motion pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), on February 14, 2005(Document No. 34.), and Plaintiff filed his Response to Defendant Dr. Williamson's Motion on March 18, 2005. (Document No. 36.)

Having examined Defendants' Motions and the Responses thereto together with all exhibits, the undersigned recommended in a Proposed Findings and Recommendation that the State Defendants' Motion to Dismiss should be granted in part and denied in part and that Defendant Dr. Williamson's Motion to Dismiss should be denied. (Document No. 39.) Respecting the State Defendants' claim that Plaintiff failed to exhaust administrative remedies, the undersigned stated as follows (<u>Id</u>., p. 16.):

> After reviewing the record, the undersigned finds that it is unclear at this point whether Plaintiff fully exhausted his administrative remedies with respect to each claim and each Defendant before filing his Complaint in this civil action. * ** * [W]ith respect to his claims concerning the knot on his head, the request for

5

medications, and the confinement in medical lockdown for two and one half days, it appears that Plaintiff submitted numerous "Inmate Medical Services Request" forms and G-1 Grievance Forms, but there is no indication in the record whether Plaintiff further submitted a G-2 Grievance Form to the Warden/Administrator or an appeal to the Commissioner. Based on the foregoing, the undersigned finds that the record is insufficient at this stage to determine whether Plaintiff has exhausted his administrative remedies. Accordingly, the undersigned finds that Plaintiff may be able to plead facts which would entitle him to relief and therefore, the State Defendants' Motion on this ground should be denied. The undersigned recommends that the District Court permit discovery limited to the issue of exhaustion, followed by a period of time for the filing of motions to dismiss with respect to the total exhaustion of Plaintiff's administrative remedies.

By Order filed on September 13, 2005, the District Court, Judge Chambers presiding, adopted the undersigned's findings and recommendation over Defendant Williamson's objection and referred the matter back to the undersigned for further proceedings. (Document No. 44.) On September 14, 2005, the undersigned filed a Time Frame Order establishing a schedule to completion of discovery and the filing of dispositive motions. (Document No. 45.) On September 16, 2005, Plaintiff filed a statement of the authorities upon which he is relying in asserting Defendants' violation of his rights under the Eighth Amendment under 42 ,U.S.C. § 1983. (Document No. 48.) The Defendants filed their pending dispositive Motions and Plaintiff responded within the time frame established by the Court.

## THE APPLICABLE STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106

6

S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322 - 23, 106 S.Ct. at 2552 - 53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 - 48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## DISCUSSION

The Prison Litigation Reform Act [PLRA], 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions under 42 U.S.C. § 1983 "or any other Federal law,"though the administrative process may not afford them the relief they might obtain through civil proceedings.[3] See Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820, 149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 984, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about

---

[3] 42 U.S.C. § 1997e(a) provides as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

7

prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.). The PLRA exhaustion requirement applies with equal force to § 1983 and Bivens actions. See Yousef v. Reno, 254 F.3d 1214, 1218 (10th Cir. 2001)(PLRA's exhaustion requirement applies to Bivens claims); Nyhuis v. Reno, 204 F.3d 65, 68-69 (3d Cir. 2000)(1997e(a) applies equally to § 1983 and Bivens actions).

In Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 678 (4th Cir. 2005), the Fourth Circuit held that administrative exhaustion is not a jurisdictional requirement. The Court stated:

> Section 1997e(c)(2) clearly contemplates the dismissal on the merits of some claims that have not been exhausted. Because a district court must have subject-matter jurisdiction before it can dismiss a claim on the merits, failure to exhaust cannot be viewed as affecting the district court's subject-matter jurisdiction over the claim. See *Chellette*, 229 F.3d at 687 ("Because the existence of jurisdiction is a prerequisite to the evaluation and dismissal of a claim on its merits, it follows that jurisdiction is not divested by the failure to exhaust administrative remedies."); *Underwood v. Wilson*, 151 F.3d 292, 295 (5th Cir. 1998)(per curiam)("The statute provides that the court may dismiss such claims without requiring the exhaustion of administrative remedies. The court would not be empowered to do so if the exhaustion provision deprived the court of jurisdiction over the action." (citation omitted)). We therefore conclude that the PLRA's exhaustion-of-remedies requirement does not operate as a bar to the district court's exercise of its subject-matter jurisdiction.

Id. at 678; See also, Perez v. Wisconsin Dept. of Corr., 182 F.3d 532, 536-37 (7th Cir. 1999); Underwood v. Wilson, 151 F.3d 292, 294 (5th Cir. 1998), cert. denied, 526 U.S. 1133, 119 S.Ct. 1809, 143 L.Ed.2d 1012 (1999); Wright v. Morris, 111 F.3d 414, 421(6th Cir.), cert. denied, 522 U.S. 906, 118 S.Ct. 263,139 L.Ed.2d 190 (1997); Nyhuis v. Reno, 204 F.3d at 69, n. 4.

The majority of the Circuits, including the Fourth Circuit, have held in the context of inmates' suits under § 1983 that the failure to exhaust administrative remedies is an affirmative

defense under Rule 8(c)[4] of the Federal Rules of Civil Procedure like the defense of statute of limitations. Anderson, 407 F.3d at 681 ("In our view, the language and structure of the PLRA make it clear that an inmate is not required to allege exhaustion of remedies in his § 1983 prison-conditions complaint. Instead, an inmate's failure to exhaust his administrative remedies must be viewed as an affirmative defense that should be pleaded or otherwise raised by the defendant."); Jackson v. District of Columbia, 254 F.3d 262, 267 (D.C. Cir. 2001); Casanova v. Dubois, 304 F.3d 75, 77, fn. 3 (1st Cir. 2002); Snider v. Melindez, 199 F.3d 108, 111-12 (2d Cir. 1999); Jenkins v. Haubert 179 F.3d 19, (2d Cir. 1999); Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002); Wendell v. Asher, 162 F.3d 887, 890 (5th Cir. 1998)(in dicta); Massey v. Wheeler, 221 F.3d 1030, 1034 (7th Cir. 2000); Massey v. Helman, 196 F.3d 727, 734-35 (7th Cir. 2000), cert. denied, 532 U.S. 1065, 121 S.Ct. 2214, 150 L.Ed.2d 208 (2001); Perez v. Wisconsin Dept. of Corr., 182 F.3d at 536; Foulk v. Charrier, 262 F.3d 687, 697 (8th Cir. 2001); cf. Knuckles El v. Toombs, 215 F.3d 640, 642 (6th Cir 2000), cert. denied, 531 U.S. 1040, 121 S.Ct. 634, 148 L.Ed.2d 542 (2000)(An inmate must "plead his claims with specificity and show that they have been exhausted by attaching a copy of the applicable administrative dispositions to the complaint, or, in the absence of written documentation, describe with specificity the administrative proceeding and its outcome."). Likewise,

---

[4] Listing certain traditionally recognized defenses, Rule 8(c) of the Federal Rules of Civil Procedure provides as follows:

**Affirmative Defenses.** In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver and any other matter constituting an avoidance or affirmative defense.

with respect to <u>Bivens</u> actions, the Seventh Circuit Court of Appeals held in <u>Dale v. Lappin</u>, 376

F.3d 652, 655 (7th Cir. 2004), that "[a]lthough exhaustion of administrative remedies is a

precondition to a federal prisoner filing a <u>Bivens</u> suit, [citations omitted] failure to exhaust is an

affirmative defense that the defendants have the burden of pleading and proving." (Citations

omitted). In the context of claims under the PLRA however, *sua sponte* dismissal by the District

Court is appropriate when it is apparent from the face of the complaint that the inmate has not

exhausted his administrative remedies. <u>Anderson</u>, 407 F.3d at 682.

> In the context of PLRA claims, then, we believe it is appropriate to recognize that district courts have the same authority to inquire into the applicability of an affirmative defense as in the habeas context. Such a conclusion gives some teeth to the PLRA's exhaustion requirement, yet does not do a disservice to the statutory language carefully chosen by Congress.
> Accordingly, we conclude that a district court may raise the issue of exhaustion of remedies on its own motion. Except in the rare case where failure to exhaust is apparent from the face of the complaint, however, a district court cannot dismiss the complaint without first giving the inmate an opportunity to address the issue.

<u>Id</u>. It appears to be the majority view as well that exhausting administrative remedies after a

Complaint is filed will not save a case from dismissal for want of subject matter jurisdiction. <u>See</u>

<u>Neal v. Goord</u>, 267 F.3d 116, 121-122 (2d Cir. 2001)(*overruled on other grounds*), a § 1983 action,

citing numerous cases. The rationale is pragmatic. As the Court stated in <u>Neal</u>,

> allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, . . . if during the pendency of a suit, the administrative process were to produce results benefitting
>
>  plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset.

10

Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court.

Furthermore, available administrative remedies must be exhausted with respect to each claim against each Defendant or the Complaint must be dismissed under the "total exhaustion rule" found in § 1997e(a). *See* Quinones v. Rubenstein, Civil Action No. 5:02-1365, Document No. 51 (S.D.W.Va. Sept. 23, 2003)(C.J. Faber)(Applying a plain meaning reading to the phrase "no action" as stated in § 1997e(a), Chief Judge Faber adopted the total exhaustion rule as applied to *habeas* actions filed pursuant to 28 U.S.C. § 2254, and applied it to §1983 and other similar actions.) (Id., p. 20 - 24.)

Proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, 376 F.3d at 655 (internal citations omitted). The West Virginia Division of Corrections' Policy Directive 335.00 establishes procedures whereby state inmates may seek review of complaints which relate to any aspect of their imprisonment, other than appeals of disciplinary and confinement matters. (Document No. 66, attachment to Exhibit A, the Declaration of Beverly Gandee.) Within 15 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must submit a G-1 Grievance Form to the Unit Manager. (Id., pp. 1-2, ¶¶ 1 and 4.) The Unit Manager must respond to the inmate's Grievance within five business days. (Id., p. 2, ¶ 9.)

If the Unit Manager's response was unfavorable, the inmate may appeal within five working days to the Warden/Administrator by filing a G-2 Grievance Form. (Id., p. 3, ¶ 1.) Should the Unit Manager fail to respond within the five day period of time, the inmate may immediately file a G-2 Grievance Form utilizing the G-1 Grievance Form copy. (Id., p. 2, ¶ 10.) The Warden/Administrator must respond to the appeal, in writing, within five working days. (Id., ¶ 3.) If the Warden/Administrator, in his/her discretion, determines that an investigation is warranted, a final response shall be made to the inmate within 30 working days. (Id., ¶ 4.) If the Warden/Administrator's response was unfavorable, the inmate may appeal within five working days to the Commissioner/designee of the Division of Corrections. (Id., pp. 3-4, ¶ 1.) Furthermore, if the Warden/Administrator fails to respond within the five day period of time, the inmate may submit his appeal to the Commissioner/designee within five working days of the lapsed response time. (Id., pp. 3-4, ¶ 1.)The Commissioner must respond to the appeal within ten working days. (Id., p. 4, ¶ 5.) The administrative process is exhausted when the Commissioner responds to the inmate's final appeal. (Id., pp. 4-5.)

The Defendants rely upon the Declaration of Beverly Gandee in asserting that Plaintiff did not fully exhaust administrative remedies. Referring to the West Virginia Division of Corrections' Policy Directive 335.00 and attaching a copy of it to her Declaration, Ms. Gandee, the Division of Corrections' Senior Inmate Grievance Coordinator overseeing the administrative remedy procedures for the West Virginia Division of Corrections, declares that she examined the Plaintiff's Complaint and "the Central Office file of inmate Joel Schoonover" and found as follows (Document No. 66, Exhibit A.):

12. The Plaintiff, Joel Schoonover #31711 exhausted his administrative remedies regarding a July 27, 2003, violation for refusing to submit to a drug/alcohol screen.

13. However, Plaintiff, Joel Schoonover #31711 failed to exhaust administrative remedies with respect to all of the issues he advances in this claim and all of the requisite actions of all of the defendants that he has sued.

Thus, the Defendants assert that Plaintiff exhausted administrative remedies with respect to his claim that he was improperly disciplined for failing to provide urine for drug/alcohol screening[5] and failed to exhaust administrative remedies with respect to the remainder of his claims and therefore presents "a mixed complaint of exhausted and unexhausted claims." (Document No. 61, p. 4.)

The undersigned has examined the entire record for documentation and information respecting Plaintiff's attempts to exhaust administrative remedies. Plaintiff attached copies of documents indicating complaints he lodged about the circumstances alleged herein to his Complaint (Document No. 1.), his additional evidence in support of his Complaint consisting of copies of various administrative remedy and request for medical service forms (Document No. 5.), and his Reply to Defendants' Waiver of Reply and Alternative Motion to Dismiss (Document No. 33.) The record contains copies of numerous medical request forms and G-1 Grievance forms indicating Plaintiff's requests for medication for his nerves and depression and complaints that his requests were not being met. It is evident that Plaintiff went through the entire administrative process with his claim that "I been trying for . . . months to get nerve and depression [medication] to help me and keep me from getting [written] up. Still nothing. I [am] being punished for something I can't help." *See* pink copy of G-2 Grievance

---

[5] The undersigned recommended that this claim be dismissed (Document No. 39, p. 25.), and the District Court adopted the undersigned's recommendation (Document No. 44.).

Form attached to Plaintiff's Complaint (Document No. 1.). It appears that these are the only circumstances which Plaintiff appealed through the entire administrative process. It does not appear that Plaintiff initiated administrative proceedings respecting the knot which he claims to have developed on his head while in punitive segregation or the 2 ½ days he was placed in a lockdown room in the MOCC medical department. Further, Plaintiff makes no specific allegations that Dr. Williamson provided insufficient medical care. Because Plaintiff asserts claims in this matter for which he did not exhaust administrative remedies, it is clear that this matter must be dismissed under the total exhaustion rule.

## PROPOSAL AND RECOMMENDATION

The undersigned hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS**, that the District Court **GRANT** Defendant Dr. Larry D. Williamson's Motion for Summary Judgment filed on January 12, 2006 (Document No. 60.), and State Defendants' Motion for Summary Judgment filed on January 16, 2006 (Document No. 65.). and **DISMISS** this matter from the Court's docket.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Thomas E. Johnston. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have thirteen days (ten days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings

14

and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.) cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Johnston, and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to counsel of record and to Petitioner, *pro se*.

ENTER: August 16, 2006.

R. Clarke VanDervort
United States Magistrate Judge

15